1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PERKINS COIE LLP**

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone:  +1.310.788.9900
Facsimile:   +1.310.788.3399

Torryn T. Rodgers, Bar No. 319126
TRodgers@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:  +1.415.344.7000
Facsimile:   +1.415.344.7050

Attorneys for Defendants
RYAN MILLER and RAVENSBURGER NORTH
AMERICA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> RYAN MILLER, an individual; RAVENSBURGER NORTH AMERICA, INC., a Washington corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. **'23CV1249 L      BLM** <br><br> **DEFENDANTS RYAN MILLER AND RAVENSBURGER NORTH AMERICA, INC.'S NOTICE OF REMOVAL AND REMOVAL OF ACTION TO FEDERAL COURT** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Ryan Miller and Ravensburger North America Inc. ("**Ravensburger**") (collectively, "**Defendants**") hereby remove to this Court the below-described action from the Superior Court of California in and for San Diego County ("**San Diego County Superior Court**"). In support of this Notice, Defendants respectfully state the following:

## I.      BACKGROUND

1.      On June 7, 2023, Plaintiff The Upper Deck Company ("**Plaintiff**" or "**Upper Deck**") commenced an action in San Diego Superior Court, entitled *The Upper Deck Company v. Ryan Miller, et al.*, as case number 37-2023-00023805-CU-BC-CTL (the "**Complaint**"). A copy of the Complaint, summons, and all process and pleadings filed to date in the San Diego Superior Court are attached as **Exhibit A**.

2.      Plaintiff served Ravensburger and Mr. Miller with the Summons and Complaint on June 9, 2023 and June 12, 2023, respectively. *See* Ex. A, at 39 (Proof of Service); *see also id.* at 44 (Notice & Acknowledgment of Receipt of Service). Thus, removal of this action is timely. *See* 28 U.S.C. § 1446(b)(1), (2)(B).

3.      Plaintiff asserts claims under California law for breach of contract, breach of fiduciary duty, fraud, inducing breach of a written contract, negligent interference with prospective economic relations, constructive trust, conversion, and unfair business practices. *See* Ex. A, at 24–31 (Compl. ¶¶ 59–110). Plaintiff seeks general and special damages, injunctive relief, restitution, punitive damages, attorneys' fees and costs, interest, an order declaring that Ravensburger holds Plaintiff's intellectual property in trust, the appointment of a receiver, and "any other remedies at law or in equity that the court deems just and proper." *Id.* at 32 (Compl., Prayer for Relief).

## II.    DIVERSITY JURISDICTION

4.    This action is removable because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds the $75,000 jurisdictional limit. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a)–(b). Removal is thus proper because this Court would have had original jurisdiction over Plaintiff's claims if Plaintiff had chosen to commence this action in federal court. *See* 28 U.S.C. §§ 1332(a), 1441(a).

### A.    Complete Diversity of Citizenship

5.    To establish complete diversity, the controversy must arise between "citizens of different states." 28 U.S.C. § 1332(a)(1). "A corporation is a citizen of both the state where it is incorporated and the state of its principal place of business." *Bhatia v. Reliance Standard Life Ins.*, No. 06-CV-1472 BEN JMA, 2007 WL 9701835, at *1 (S.D. Cal. Apr. 20, 2007); *see also* 28 U.S.C. § 1332(c)(1). "For purposes of diversity jurisdiction, an individual is the citizen of the state in which he is domiciled." *Weight v. Active Network, Inc.*, 29 F. Supp. 3d 1289, 1292 (S.D. Cal. 2014).

6.    Plaintiff is a Nevada corporation with its principal place of business in Carlsbad, California, and is therefore a citizen of Nevada and California. *See* Ex. A, at 16 (Compl. ¶ 7); *see also Bhatia*, 2007 WL 9701835, at *1.

7.    Mr. Miller, an individual, resides and is domiciled in Puyallup, Washington. *See* Ex. A, at 16 (Compl. ¶ 8); Decl. of Ryan Miller ("**Miller Decl.**") ¶ 11. He is therefore a citizen of Washington. *See Weight*, 29 F. Supp. 3d at 1292.

8.    Ravensburger is a corporation organized and existing under the laws of the state of Washington. *See* Ex. A, at 16 (Compl. ¶ 9). Ravensburger's headquarters and principal place of business are in Seattle, Washington. *Id.* Ravensburger is therefore a citizen of Washington. *See Bhatia*, 2007 WL 9701835, at *1.

9.    The Complaint also names Doe Defendants "1 through 100, inclusive."

*See* Ex. A, at 16 (Compl. ¶ 10). However, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Therefore, only named defendants are considered in determining whether diversity exists. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998); *see also Davis v. Lowe's Corp.*, No. 19CV1284 JM (KSC), 2019 WL 13197810, at *3 (S.D. Cal. Sept. 26, 2019); *Inglis v. D.R. Horton, Inc.*, No. 08 CV 1825 JM (BLM), 2008 WL 4997611, at *2 (S.D. Cal. Nov. 24, 2008).

10.     Because Plaintiff is a citizen of Nevada and California and Defendants (the only other named parties in this action) are each citizens of Washington, there is complete diversity of citizenship for purposes of jurisdiction under 28 U.S.C. § 1332(a).

### B.     The Amount in Controversy Easily Exceeds $75,000

11.     For a federal court to exercise diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021) (citing to *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). In addition, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In determining the amount in controversy, a single plaintiff's claims against multiple defendants may be aggregated where defendants are jointly liable to the plaintiff. *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1978).

12.     Here, Plaintiff alleges it is a "leading manufacturer of, among other products, sports and entertainment trading cards and trading card games," and that the product at issue in this case—Rush of Ikorr ("**ROI**")—is its latest "creation in this long line of successful and popular products." Ex. A, at 17 (Compl. ¶¶ 11–12).

Plaintiff alleges ROI is "nearly identical" to Ravensburger's forthcoming trading card game, Lorcana, and contends the similarities "can only be the product of . . . theft of Upper Deck's intellectual property and other proprietary concepts." *Id.* at 20 (Compl. ¶ 32).

13.     Plaintiff seeks to remedy its alleged harms, which include, without limitation, "lost sales, loss of goodwill and popularity of the game, thwarting the [ROI] launch, loss of related revenue streams, loss of capital, costs and expenses paid to Miller and others to develop [ROI], time delay costs, and loss of further internal resources dedicated to [ROI]." *See* Ex. A, at 28 (Compl. ¶ 83). As relief, Plaintiff seeks, *inter alia*, general, special, and punitive damages, restitution, and a constructive trust. *See* Ex. A, at 32 (Compl., Prayer for Relief).[1]

14.     Plaintiff's allegations regarding its contractual arrangements with Mr. Miller provide some insight into Upper Deck's alleged investment in developing ROI. For example, Plaintiff alleges that in December 2018, it "held a Gaming Summit" whereby Plaintiff "invited and paid expenses for several game designers, including Miller" and "invested substantial resources, monetary and otherwise" for them to create, brainstorm, and collaborate on a new trading card game. Ex. A, at 17–18 (Compl. ¶¶ 15, 17). According to Mr. Miller, four other designers attended the 2018 Gaming Summit. Miller Decl. ¶ 7. Mr. Miller incurred approximately $154.65 in expenses attending the summit, which were paid and/or reimbursed by Upper Deck. *Id.* ¶ 7.

15.     Plaintiff further alleges that it paid Mr. Miller for his attendance and work at the summit. Ex. A, at 17–18 (Compl. ¶ 16). Mr. Miller was compensated $5,000 for his work during the 2018 Gaming Summit. Miller Decl. ¶ 7.

16.     Following the 2018 Gaming Summit, Upper Deck retained Mr. Miller's services, on a work for hire basis, as lead game designer for the physical

---

[1] Defendants do not concede that Plaintiff has suffered any harm, nor do they concede that Plaintiff is entitled to any damages.

trading card game known as Shell Beach, which Plaintiff alleges would become the ROI game. Miller Decl. ¶ 8; *see also* Ex. A, at 17–18 (Compl. ¶¶ 16, 18). The terms of Mr. Miller's engagement with Plaintiff are memorialized in a June 24, 2019 Work for Hire Agreement (the "**Work for Hire Agreement**" or "**WFH Agreement**"). Miller Decl. ¶ 8; *see also* Ex. A, at 18 (Compl. ¶ 19).

17.    According to Plaintiff, Mr. Miller was paid based upon completion of various milestones. Ex. A, at 18 (Compl. ¶ 20); Miller Decl. ¶¶ 8–9; *id.* Ex. 2. Plaintiff alleges that "Miller completed Milestones 1 through 5, per the Work For Hire Agreement for Rush of Ikorr, and Upper Deck paid him tens of thousands of dollars for his services." Ex. A (Compl. ¶ 24). Mr. Miller was compensated $29,000 for services provided to Upper Deck under the Work for Hire Agreement. Miller Decl. ¶ 9.

18.    Of course, the money paid to Mr. Miller under the Work for Hire Agreement is only part of Plaintiff's investment into the development of the game that allegedly became ROI. Plaintiff's investment clearly included internal resources, such as the time of Upper Deck personnel. Mr. Miller was an independent contractor providing consulting services: he necessarily worked with and received feedback from Upper Deck personnel. *See* Ex. A, at 19 (Compl. ¶ 23 ("Miller received feedback from Upper Deck at the completion of each [m]ilestone and then implemented that feedback"). Indeed, the Work for Hire Agreement called for Mr. Miller to travel to Plaintiff's offices at least twice for gaming summits, where Mr. Miller would work with Upper Deck personnel. Miller Decl. ¶ 9.

19.    Doubtless, Plaintiff worked with other designers, game developer, artists, vendors, and manufacturers to develop ROI, all at additional cost. Indeed, Plaintiff alleges it "dedicate[d] substantial time and resources to further develop [ROI]," including by hiring "two additional work-for-hire game designers" to finish the game. Ex. A, at 20 (Compl. ¶ 28). Plaintiff's work to develop ROI continued for at least two and a half years after Mr. Miller terminated the Work for Hire

1   Agreement in October 2020. *Compare* Ex. A, at 19 (Compl. ¶ 25) *with id.* at 20

2   (Compl. ¶ 30) (alleging patent application filing in April 2023). Such work

3   ostensibly required substantially more investment than the $80,000 that Plaintiff

4   planned to pay Mr. Miller for an 18-month engagement providing services as lead

5   game designer. *See* Miller Decl. ¶ 8.

6       20.     Presumably, Plaintiff's alleged harm includes the costs associated with

7   preparing and filing the April 2023 patent application for ROI. *See* Ex. A, at 20

8   (Compl. ¶ 30). The costs associated with preparing and filing such an application

9   can easily reach tens of thousands of dollars. *See* USPTO fee schedule (eff. Dec.

10  29, 2022), *available at* https://www.uspto.gov/learning-and-resources/fees-and-

11  payment/uspto-fee-schedule#Patent%20Fees.

12      21.     Moreover, Plaintiff certainly expected a significant return on its

13  investment in the development and production of ROI, which—given the planned

14  investment of $80,000 for Miller's role as lead game designer (*see* Miller Decl. ¶

15  8)—was surely projected to exceed the $75,000 jurisdictional minimum.

16      22.     Finally, as relief for its alleged harms, Plaintiff seeks to recover

17  essentially all revenue and income flowing from the sale of Lorcana, under a theory

18  of constructive trust or disgorgement of profits. *See* Ex. A, at 29–30 (Compl. ¶¶ 93–

19  99, 110); *id.* at 32 (Compl., Prayer for Relief). "[I]n non-class action cases, the

20  amount in controversy may be measured . . . by . . . the cost to the defendant if the

21  relief is granted." *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928

22  (N.D. Cal. 1992) (holding jurisdictional minimum was met where complaint prayed

23  for constructive trust to hold disgorgement of gains allegedly unjustly earned); *see*

24  *Ridder Bros. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944). To date, Ravensburger

25  has invested well over $75,000 in the design, production, and launch of Lorcana.

26  Decl. of Florian Baldenhofer ("**Baldenhofer Decl.**") ¶ 2. Ravensburger stands to

27  lose at least this investment if Plaintiff obtains the relief sought in the Complaint.

28      23.     Taken together, Plaintiff's allegations (when viewed in the context of

matters properly in this Notice of Removal and/or before the Court under the doctrine of incorporation by reference) show the amount in controversy in this action far exceeds the jurisdictional threshold of $75,000. *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 89 ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

### III.    INTRA-DISTRICT ASSIGNMENT

24.    This Court is the district and division embracing the place where the State Court action is currently pending (San Diego County, California). It is therefore the appropriate court for removal pursuant to 28 U.S.C. §§ 1441(a) and 1446(a). This action is being removed to the San Diego County Division because it is pending in San Diego Superior Court.

### IV.    OTHER COMPLIANCE

25.    <u>Consent of Defendants.</u> All served defendants (Mr. Miller and Ravensburger) consent to removal.

26.    <u>Attachment of Pleadings.</u> As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon or obtained by Defendants are being filed herewith. *See* Ex. A. Additionally, a true and correct copy of the state court's docket (i.e., the Register of Actions) is attached hereto as **Exhibit B**.

27.    <u>Notice to State Court/Plaintiff.</u> Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve on Plaintiffs and file with the Superior Court a "Notice to Adverse Party of Removal to Federal Court."

28.    <u>Reservation of Rights.</u> Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendants' right to assert any defense or affirmative matter, including without limitation any defense available under Federal Rule of Civil Procedure 12, or any other procedural or substantive defense available under State or Federal law. Defendants reserve the right to amend or

supplement this Notice of Removal.

**WHEREFORE**, Defendants request that this Court consider this Notice of Removal as provided by law governing the removal of cases to this Court, take such steps as are necessary to achieve the removal of this matter to this Court from San Diego County Superior Court, retain jurisdiction for further proceedings pursuant to 28 U.S.C. §§ 1441 and 1446, and make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the state court action.

Dated:  July 6, 2023                              **PERKINS COIE LLP**


By: s/Alisha C. Burgin
    Alisha C. Burgin
    Torryn T. Rodgers

Attorneys for Defendants
RYAN MILLER and RAVENSBURGER
NORTH AMERICA, INC.

## Index of Exhibits

| Ex. | Description | Page |
|---|---|---|
| A | Documents filed and/or obtained by Defendants in San Diego Superior Court Case No. 37-2023-00023805-CU-BC-CTL | 11 |
|  | Civil Case Cover Sheet (6/7/23) | 12 |
|  | Complaint (6/7/23) | 14 |
|  | Original Summons (6/7/23) | 33 |
|  | Notice of Case Assignment (6/8/23) | 34 |
|  | Alternative Dispute Resolution Information (6/8/23) | 36 |
|  | Stipulation to Alternative Dispute Resolution Procedures (6/8/23) | 38 |
|  | Proof of Service of Summons -- Ravensburger (6/12/23) | 39 |
|  | Proof of Service of Notice and Acknowledgement of Receipt to Miller (6/12/23) | 41 |
|  | Proof of Service of Summons -- Miller (6/30/23) | 44 |
| B | Register of Actions for San Diego Superior Court Case No. 37-2023-00023805-CU-BC-CTL | 48 |

# EXHIBIT A

Documents filed and/or obtained by Defendants in San Diego
Superior Court Case No. 37-2023-00023805-CU-BC-CTL

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Craig Nicholas (SBN 178444) \| Shaun Markley (SBN 291785)<br>NICHOLAS & TOMASEVIC, LLP, 225 Broadway, 19th Floor, San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 325-0492    FAX NO. *(Optional):*<br>E-MAIL ADDRESS: cnicholas@nicholaslaw.org; smarkley@nicholaslaw.org<br>ATTORNEY FOR *(Name):* Plaintiff THE UPPER DECK COMPANY | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**06/07/2023** at 09:27:49 AM<br>Clerk of the Superior Court<br>By Sophia Felix,Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

CASE NAME:
The Upper Deck Company v. Ryan Miller, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☒ **Unlimited**  ☐ **Limited**<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2023-00023805-CU-BC-CTL<br>JUDGE: Judge Gregory W Pollack<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☒ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☒ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
4. Number of causes of action *(specify)*: (8): Breach of Contract and Fiduciary Duty, Violations of Cal. Lab. Code, Bus. & Prof. Code.
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 7, 2023

Craig Nicholas (SBN 178444)
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]         **CIVIL CASE COVER SHEET**         Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Exhibit A
Page 12

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

**Page 2 of 2**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

Exhibit A
Page 13

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff,
THE UPPER DECK COMPANY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/07/2023** at 09:27:49 AM

Clerk of the Superior Court
By Sophia Felix,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>RYAN MILLER, an individual; RAVENSBURGER NORTH AMERICA, INC., a Washington corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.  37-2023-00023805-CU-BC-CTL<br><br>**COMPLAINT FOR:**<br><br>**(1)**  **BREACH OF CONTRACT;**<br><br>**(2)**  **BREACH OF FIDUCIARY DUTY;**<br><br>**(3)**  **FRAUD [CAL. CIV. CODE § 1710(3)];**<br><br>**(4)**  **INDUCING BREACH OF A WRITTEN CONTRACT;**<br><br>**(5)**  **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**<br><br>**(6)**  **CONSTRUCTIVE TRUST [CAL. CIV. CODE § 2224]; AND**<br><br>**(7)**  **CONVERSION; AND**<br><br>**(8)**  **UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff, The Upper Deck Company ("Upper Deck"), complains and alleges against Defendants Ryan Miller ("Miller"), Ravensburger North America, Inc. ("Ravensburger"), and DOES 1 through 100, inclusive (collectively referenced henceforth as "Defendants"), and alleges on information and belief as follows:

## INTRODUCTION

1.      Upper Deck seeks to protect its intellectual property from premeditated theft by Miller. On a work for hire basis, Upper Deck engaged Miller as lead game designer to develop a major proprietary trading card game for Upper Deck called "Rush of Ikorr."  After over a year of developing Rush of Ikorr alongside Upper Deck, Miller terminated his contract with Upper Deck and, either before termination or just after, began working for Defendant Ravensburger, a direct competitor. At Ravensburger, Miller transported his work product on Rush of Ikorr, knowing such work product was owned solely by Upper Deck, into a trading card game called "Disney Lorcana" ("Lorcana"). This trading card has remarkable, uncanny similarities to Upper Deck's Rush of Ikorr.

2.      Miller's acts in pilfering the game design Upper Deck paid him to create and using those designs to develop a competing trading card game for a competitor were aided and encouraged by Ravensburger, who now seeks to profit from the stolen intellectual property.  These acts give rise to a host of causes of action under California and federal law.

## JURISDICTION & VENUE

3.      The amount in controversy arising from the actions and statutory violations as further described below is sufficient to implicate the general unlimited jurisdiction of the Superior Court in and for San Diego County.

4.       This Court has personal jurisdiction over Miller. Miller performed services for Upper Deck, a San Diego-based company. He signed and breached two contracts with Upper Deck, both of which contained California choice-of-law and San Diego dispute resolution venue provisions. In performance of the services under the contracts, Miller traveled to San Diego County, including to the 2018 Gaming Summit at Upper Deck's office where Miller and other contracted game designers, in addition to Upper Deck personnel and senior management, brainstormed, conceived, and invented the game concept that became Rush of Ikorr.  Miller's actions establish sufficient minimum contacts

1  with the state of California, making it fair and reasonable for Miller to be held accountable in a

2  California court.

3       5.    This Court also has personal jurisdiction over Defendant Ravensburger. On

4  information and belief, Ravensburger has acted in concert with Miller during much of the time

5  relevant to this Complaint, resulting in a breach of Miller's California contracts. Ravensburger's

6  trading card game at the center of this Complaint, "Disney Lorcana," is a Disney-licensed product,

7  who is a California headquartered company. On information and belief, Ravensburger has made pre-

8  sales of Lorcana and will soon make deliveries on its pre-sales, to individuals residing in the state of

9  California, County of San Diego. As such, Ravensburger has sufficient minimum contacts to make

10 it fair and reasonable for Ravensburger to be held accountable in a California court.

11      6.    Venue is proper in this judicial district, pursuant to California Code of Civil

12 Procedure section 395, as Upper Deck's principal place of business is in San Diego County, and

13 Defendants conduct and/or have conducted business within San Diego County relevant to this action

14 as explained above.

## **PARTIES**

16      7.    Plaintiff The Upper Deck Company is, and at all relevant times was, a corporation

17 organized and existing under and by virtue the laws of the State of Nevada. Upper Deck is authorized

18 to conduct business in California and has its principal place of business at 5830 El Camino Real,

19 Carlsbad, California 92008. Upper Deck is a worldwide sports and entertainment company that, for

20 decades, has created valuable and innovative entertainment products.

21      8.    Defendant Ryan Miller is an individual formerly contracted by Upper Deck to

22 collaborate and further develop its Rush of Ikorr trading card game. He is a current employee of

23 Ravensburger. Upon information and belief, Miller resides in Seattle, Washington.

24      9.    Defendant Ravensburger North America, Inc. is a Washington corporation with a

25 principal business address at 915 E. Pine Street, Suite 400, Seattle, Washington 98122. Ravensburger

26 is a game and toy company and is a direct competitor to Upper Deck.

27      10.   Upper Deck does not know the true names and/or capacities, whether individual,

28 partners, or corporate, of Defendants sued herein as DOES 1 through 100, inclusive, and for that

reason sues said Defendants under fictitious names. Plaintiff will seek leave to amend this Complaint when the true names and capacities of these Defendants have been ascertained. Plaintiff is informed and believes and thereon allege that these Defendants are responsible in whole or in part for Plaintiff's alleged damages.

## GENERAL ALLEGATIONS

### A.    The Parties' Relevant Experience with Trading Card Games

11.    Upper Deck is a leading manufacturer of, among other products, sports and entertainment trading cards and trading card games. Upper Deck has developed and successfully sold a multitude of novel and innovative trading card games (sometimes called "TCG"), which include, but are not limited to: Vs. System® 2PCG®; World of Warcraft Trading Card Game; Yu-Gi-Oh!; Super Hero Squad; QuickStrike; and Winx Club.

12.    Rush of Ikorr is Upper Deck's latest, still-in-progress creation in this long line of successful and popular products.

13.    For decades, Miller has worked in the entertainment and gaming industries, mostly serving as a freelance, work made-for-hire game designer. Prior to Rush of Ikorr, he helped design several of Upper Deck's games. On information and belief, Miller has worked for other companies to design various other types of strategy games like Magic: The Gathering; Duel Masters and Kaijudo; and Digimon.

14.    Ravensburger is an entertainment company that focuses on toys, including games. While Ravensburger has made many strategy games over the years, on information and belief, trading card games are not something it normally makes or has made in the past.

### B.    The 2018 Upper Deck Gaming Summit Leading to Rush of Ikorr

15.    Looking to make its next hit TCG, Upper Deck held a Gaming Summit from December 15 through December 16, 2018. Upper Deck invited and paid expenses for several game designers, including Miller, to visit Upper Deck's Carlsbad office with the specific purpose of aiding Upper Deck in the creation, brainstorm, and collaboration of a new and novel TCG.

16.    Like the other game designers who accepted their invitation to the Gaming Summit, Miller entered into a 2018 Upper Deck Gaming Summit Agreement ("Summit Agreement"). In

exchange for the compensation he would receive, the Summit Agreement called for Miller to contribute ideas and feedback relating to the design and creation of new games and game mechanics that Upper Deck would own and hold all rights to use. The Summit Agreement also contained confidentiality and work for hire clauses requiring Miller to keep private anything shared at the Summit and acknowledge that works and concepts created as a result of or in connection with the Summit belonged exclusively to Upper Deck.

17.     Upper Deck invested substantial resources, monetary and otherwise, in its Gaming Summit to best incubate the seeds of a highly innovative and marketable TCG.

18.     At the Gaming Summit, Miller, among other game designers, and Upper Deck personnel and senior management discussed, conceived, and created what would become the trading card game currently called "Rush of Ikorr." Upper Deck subsequently offered Miller the role as lead game designer in 2019.

**C.     Upper Deck and Miller's Development of Rush of Ikorr**

19.     Miller's role as lead game designer was memorialized via a Work For Hire Agreement dated June 24, 2019 ("Work For Hire Agreement"). Per the Work For Hire Agreement, Upper Deck agreed to pay Miller to create and design a TCG that could be played both in physical and digital form. Miller was responsible to create the initial theme of Rush of Ikorr, develop basic game mechanics, provide a single player demonstration deck with between 20-30 cards to convey the game's design, and to "use his best efforts to contribute ideas, concepts, designs, and feedback related to the design, mechanics, and creation of the [Rush of Ikorr TCG] commensurate with UDC's brand."

20.     The Work For Hire Agreement set out a timeline running from June 2019 through March 2021 under which Miller would complete various milestones and expansions of Rush of Ikorr.

21.     As with the Summit Agreement, the Work For Hire Agreement provided that all of the products, works, concepts, trade secrets, and intellectual property developed by Upper Deck and Miller to create Rush of Ikorr belonged solely to Upper Deck. As such, the parties agreed that Rush of Ikorr and related and underlying materials were works made for hire belonging to Upper Deck

1  and were irrevocably assigned by Miller to Upper Deck including all modifications and derivatives

2  thereof.

3        22.     Under the Work For Hire Agreement, Miller also agreed to keep confidential any

4  information he received in carrying out and performing work on Rush of Ikorr. This obligation

5  continued even after termination or satisfaction of the contract.

6        23.     Following the parties' execution of the Work For Hire Agreement, the detailed

7  development of Rush of Ikorr commenced. As lead game designer, Miller was tasked with creating

8  Rush of Ikorr's rules, card designs, game mechanics, and win conditions. Pursuant to the Work For

9  Hire Agreement, Miller received feedback from Upper Deck at the completion of each Milestone

10  and then implemented that feedback.

11        24.     Ultimately, Miller completed Milestones 1 through 5, per the Work For Hire

12  Agreement for Rush of Ikorr, and Upper Deck paid him tens of thousands of dollars for his services.

13        25.     On or about October 21, 2020, Miller informed Upper Deck that he was terminating

14  the Work For Hire Agreement.

15        26.     Throughout Miller's time as lead game designer of Rush of Ikorr, Miller had direct

16  access to Upper Deck's confidential, proprietary information, including, without limitation, Rush of

17  Ikorr draft rules, concepts, components, designs, marketing strategies, and plans for implementation.

18  On information and belief, Miller maintained access to these things even after terminating his

19  relationship with Upper Deck and used, referenced, and/or otherwise relied on them to create

20  Lorcana for Ravensburger.

21        **D.**     **Miller Goes to Work for a Competitor, Ravensburger**

22        27.     Either before or just after Miller terminated the Work for Hire Agreement, he began

23  to work with Ravensburger.  After Miller began consulting with Upper Deck on Rush of Ikorr

24  pursuant to his agreements with Upper Deck, upon information and belief, Miller began discussing

25  potential work for and/or employment by Ravensburger, although he concealed this fact from Upper

26  Deck.

27  / / /

28  / / /

6<br>COMPLAINT

**E.    Upper Deck Continues to Develop Rush of Ikorr**

28.    Despite Miller's departure, Upper Deck continued to invest in the Rush of Ikorr game design by dedicating substantial time and resources to further develop Rush of Ikorr; Miller's exit directly resulted in a significant time delay and interruption in the game development process, as well as increased costs incurred by Upper Deck. For example, Upper Deck hired two additional work-for-hire game designers to finish Rush of Ikorr under Upper Deck's direction and guidance.

29.    Upper Deck has not publicly announced or launched Rush of Ikorr.

30.    In April 2023, Upper Deck filed a patent application for Rush of Ikorr.

**F.    Ravensburger Announces Lorcana**

31.    Unbeknownst to Upper Deck, Ravensburger and Miller spent approximately 2.5 years developing Lorcana which Ravensburger first announced publicly in or around September of 2022. Ravensburger publicly named Miller the product manager and co-designer of the trading card game. In an interview at the time of the announcement, Miller acknowledged that, in creating the game, "[w]e're not trying to reinvent the wheel." https://www.thegamer.com/disney-lorcana-tcg-ravensburger-ryan-miller-interview-d23-expo/.

32.    While the game did not provide many details when first announced in 2022, in or around April 2023, Upper Deck was able to inspect Lorcana's publicly posted rules, and determined Lorcana and Rush of Ikorr were nearly identical, as discussed further below. The features in Lorcana were in fact novel and proprietary to Rush of Ikorr and their replication into Lorcana can only be the product of Miller's theft of Upper Deck's intellectual property and other proprietary concepts.

33.    Ravensburger has already sold packs of cards for Locana. Ravensburger has also allowed people to test play the game at conventions and other promotional events.

**G.    An Overview of Rush of Ikorr**

*1.    The basics*

34.    Rush of Ikorr is a TCG designed to last approximately an hour. It can be played one-on-one or with multiple players per team without major changes to gameplay mechanics.

/ / /

/ / /

---

7
COMPLAINT

*2.   Building your deck*

35.     To play, each player needs cards which are purchased from Upper Deck. The player uses purchased cards (or ones he/she has acquired through trading, etc.) to strategically build a deck consisting of 40 cards. There can be no more than three identical cards in a deck and the deck can only contain two colors of cards. There are four colors to select from: yellow, green, blue, and red.

36.     There are also five card types: Champions (playable creatures that Attack enemies or engage in Raids), Locations (effects put into play and remain until destroyed), Spells (one-time actions a player can initiate), Avatars (this represents the player and helps to determine the two color composition of a deck), and Overlays (Cards that can modify Champions).

37.     The cards in Rush of Ikorr contain "Abilities" (i.e., keywords) which add certain effects to the cards. As example, a card with the Ability "Support" has the ability to provide a friendly Champion with extra Strength. A card with the Ability "Elusive" can only be Attacked by other Champions with the "Elusive" ability. A card with the Ability "Formidable" will destroy the opponent it faces in battle, even if it would otherwise lose the fight based on its relative strength rating.

*3.   Beginning to play*

38.     With a deck built and in hand, at the outset of the game, each player or team takes on the role of an Avatar of a god from an ancient culture, such as Greece or Maya.

39.     To start the game-play, players draw the top five cards from their shuffled deck into to their hand.

40.     When it is your turn, a player will draw an additional card to their hand, then may draw a card face down to place directly to the "Influence Zone."

41.     The Influence Zone serves as the resource pool for the player. Cards are placed into the Influence Zone face down and each card in the Influence Zone represents one "Influence" during each turn of play. Influence is the resource that players consume in order to place the cards in their hand into the field of play. Each card has a "Recruit Cost" dictating how much "Influence" the player must spend to play the card. For example, a card with a Recruit Cost of four requires four face down

cards (i.e. "Influence") to be in the player's Influence Zone in order to be summoned into the field of play. Influence is consumed for only one round and is returned for the player's next turn.

42.     After drawing a card into the Influence Zone, the player enters the "Main Phase." During the Main Phase, players can exhaust their Influence to summon a card, activate a card's ability, or Attack an enemy Raider. One caveat is that players cannot Raid or Attack on the first turn a Champion is summoned unless the Champion has an Ability granting it the means to do so.

43.     Players can also send their Champions on Raids during the Main Phase. Raids last one turn and is the mechanism by which players earn Gems—Rush of Ikorr's win currency. Champions are assigned a "Raid Value" which is the number of Gems the Champion will earn if the Raid is successful.

44.     Champions are vulnerable to enemy attacks while Raiding. If an attack is performed on a Raider, the cards' Strength values will be compared, where the card with the lowest Strength value is destroyed. In the case where the cards have equal Strength, both cards are destroyed. At the core of Rush of Ikorr is the mechanic that in order to acquire win currency, Gems, the player must put their Champions in a vulnerable state.

45.     Unique to Rush of Ikorr, the win conditions require players to build themselves up, as opposed to the predominant TCG win condition of annihilating your opponent. As mentioned, Rush of Ikorr utilizes a win currency called Gems. Gems are gained through Raiding and once gained, cannot be lost. Players win Rush of Ikorr by being the first to gain the set number of Gems which depends on the amount of individuals playing on each side.

46.     In essence, the core gameplay loop of Rush of Ikorr is to: (1) summon Champions; (2) engage in Raids; (3) mount Attacks to stifle enemy Raids; and (4) retrieve Gems.

**H.     Lorcana Functions Just Like Rush of Ikorr**

*1.     The basics*

47.     Lorcana is a TCG which can be played within an hour. It can be played one-on-one or with multiple players without major changes to gameplay mechanics.

/ / /

/ / /

*2.    Building your deck*

48.    To play, each player needs cards which are purchased from Ravensburger or Disney. The player uses purchased cards (or ones he/she has acquired through trading, etc.) to strategically build a deck consisting of 60 cards. There can be no more than 4 identical cards in a deck and the deck can only contain two colors of cards maximum out of 6 colors to choose from (yellow, green, blue, purple, red, or grey).

49.    There are four card types: Characters (playable creatures that Challenge enemies or engage in Quests), Items (effects put into play and remain until destroyed), Actions (one-time advantages a player can initiate), and Songs (a sub-type of Actions).

50.    The cards in Lorcana contain "Abilities and Effects" (i.e., keywords) which add effects to the card. The Abilities and Effects in Lorcana in many cases are copied and pasted from that of Rush of Ikorr. For example, some cards in Lorcana contain a "Support" Ability which allows the Character to provide friendly Characters with Strength. Some cards contain an Ability called "Evasive" which has the same exact effect as the "Elusive" Ability in Rush of Ikorr. Further, some cards in Lorcana also contain an Ability that has the same effect as the "Formidable" Ability in Rush of Ikorr. Because all the Lorcana cards are not yet publicly available, Upper Deck cannot know the full extent of the overlap between the cards in each game, but believes and is informed there are others.

*3.    Beginning to play*

51.    With a deck built and in hand, at the outset of the game, each player takes on the role of an Avatar or "Illumineer" Disney characters.

52.    To start the game-play, players begin by drawing seven shuffled cards to their hand.

53.    During the player's turn, he/she will draw an additional card to their hand and may put a card face down into the "Inkwell" at any time. Ink is the resource players consume in order to place the cards in their hand into the field of play. For example, a card with a "Cost" of four requires four "Inks" or face down cards in the player's Inkwell. Ink is consumed for only one round and is returned for the player's next turn. The Inkwell functions near-identically to Rush of Ikorr's Influence Zone.

54.     After drawing a card to their hand, the player enters the "Main Phase." During the Main Phase, players can exhaust their Ink to summon a card, activate a card's ability, or Challenge a Questing enemy. Just like Rush of Ikorr, players cannot Quest or Challenge on the first turn a Character is summoned unless the Character has an Ability allowing it to do so.

55.     Once in the field of play, players can send their Characters on Quests during the Main Phase. Quests last one turn and is the mechanism by which players earn Lore—Lorcana's win currency. Characters are assigned a "Lore Value" which is the number of Lore the Character will earn if the Quest is successful. Lore and Lore Value function identically to Rush of Ikorr's Gems and Raid value.

56.     Characters are vulnerable to enemy Challenges while Questing. If a Challenge is performed on a Questing enemy, the cards' Strength (damage dealt) and Willpower (damage received before banishment) are compared, where a card is banished if its Willpower is of less value than its opponent's Strength. Like Rush of Ikorr, at the foundation of Lorcana's gameplay is that to acquire its win currency, Lore, the player must put their Characters in a vulnerable state.

57.     Also like Rush of Ikorr, the win conditions in Lorcana require players to build themselves up, as opposed to the predominant TCG win conditions of annihilating your opponent. This is through the use of the win currency "Lore," which are gained through Questing and cannot be lost once gained. Players win Lorcana by being the first to gain twenty Lore.

58.     Thus, the core gameplay loop of Lorcana is to: (1) summon Characters; (2) engage in Quests; (3) mount Challenges to stifle enemy Quests; and (4) retrieve Lore.

## <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION
#### Breach of Contract
#### (Against Defendant Miller)

59.     Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

60.     As a condition of his provision of services to Upper Deck, Miller signed and agreed to abide by (1) the terms of the Summit Agreement between himself and Upper Deck and (2) the terms of the Work For Hire Agreement between Miller and Upper Deck (collectively, the

"Agreements"). Both Agreements prohibited Miller from, among other things, using or disclosing Upper Deck's intellectual property and confidential information. Each Agreement also makes clear that any concepts developed by Miller while working under the Agreements belong exclusively to Upper Deck and not Miller. Miller is not to disclose, use, or otherwise benefit from the work he performed for Upper Deck outside of that relationship.

61.    Upper Deck fully complied with and fulfilled its obligations under the Summit Agreement and Work For Hire Agreement by, among other things, compensating Miller in accordance with the Agreements for the services he rendered.

62.    Miller breached his Summit and/or Work For Hire Agreements by, without authorization, copying Upper Deck's proprietary and novel TCG game and disclosing the central, proprietary components and expressions within the game to Upper Deck's direct competitor, Ravensburger, to develop the Lorcana trading card game.

63.    Upper Deck has sustained and will sustain damages as a direct and proximate result of Miller's breach of the Agreements. This includes but is not limited to lost sales, loss of goodwill and popularity of the game, and loss of related revenue streams.

### SECOND CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(Against Defendant Miller)**

64.    Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

65.    Miller was the lead game designer hired on a work-for-hire basis to develop Rush of Ikorr.  He possesses expert knowledge in a unique field that requires specialized expertise: professional game design.  He agreed to provide his professional advice, development expertise and services to Upper Deck.  Upper Deck reasonably expected Miller to abide by his professional duties of care and loyalty owed to Upper Deck.  The nature of Miller's professional services entrusted him with Upper Deck intellectual property and proprietary information, and required Miller to safeguard Upper Deck's interests in developing Rush of Ikorr.  As a result, Miller has a continuing duty to not take, use, or disclose the ideas, concepts, details, and other aspects of Rush of Ikorr for himself or others.

66.     Miller breached his fiduciary duty to Upper Deck by stealing core concepts and proprietary, novel elements of Upper Deck's game and using it to develop Lorcana.

67.     Miller's breach has proximately caused irreparable injuries to Upper Deck and is substantially likely to continue causing irreparable injuries to Upper Deck unless enjoined.

68.     The aforementioned acts of Miller were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud, which conduct justifies the awarding of exemplary and punitive damages in an amount to be determined at trial. Upper Deck is further entitled to attorney's fees.

**THIRD CAUSE OF ACTION**
**Fraud (Concealment)—Cal. Civ. Code § 1710(3)**
**(Against Defendant Miller)**

69.     Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

70.     Miller, as a work for hire contractor that specifically agreed and acknowledged that he would keep in confidence the nature of his work for Upper Deck, had a special relationship and owed a fiduciary duty.

71.     During his engagement with Upper Deck for Rush of Ikorr, Miller, who lived in the same city as Ravensburger's United States headquarters, concealed discussions with Ravensburger relating to his possible employment or potential employment with Ravensburger. Miller also failed to disclose, upon his departure from Upper Deck, that he would be going to work for a competitor designing a competing, near-identical TCG based on and using Upper Deck's Rush of Ikorr property. Upper Deck did not know or have reason to know of these facts.

72.     Miller then intentionally concealed from Upper Deck his intent to seize its confidential and proprietary game and transfer them to Ravensburger without Upper Deck's knowledge.

73.     Miller continued to have an on-going relationship with Upper Deck employees after he terminated his work on Rush of Ikorr, without ever mentioning to Upper Deck or its employees that he had stolen and continued to use Upper Deck's property.  Miller did so to deceive Upper Deck and avoid it finding out about his plans to design a competing, identical game.

13
COMPLAINT

74.     During his engagement with Upper Deck, had Upper Deck known that Miller was talking to and/or potentially working with Ravensburger, or alternatively, known Ravensburger was later planning to begin the development of a TCG nearly identical to Rush of Ikorr, Upper Deck would have responded differently. Such responses would have included, without limitation, seeking to ensure Miller returned and destroyed any copies of any documents Miller had relating to Rush of Ikorr, seeking to enjoin the competing, knock-off TCG, and/or preventing its current employees and contractors from communicating with Miller about Rush of Ikorr.

75.     Upper Deck was unaware of the material facts that were suppressed and concealed by Miller. If Upper Deck had been aware, it would have taken affirmative action to protect its ideas, concepts, details, and intellectual property from Miller's wrongful acts.

76.     As a proximate result of Miller's intentional and fraudulent conduct, Upper Deck suffered, and continues to suffer harm in having a competing TCG that copies the essence of Rush of Ikorr released and sold as Upper Deck continues to try to bring its product to market. Miller's concealment is a substantial factor in this harm as it would not have occurred but for the concealment and related activities by Miller and Ravensburger.

77.     The aforementioned acts of Miller were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud, which conduct justifies the awarding of exemplary and punitive damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Inducing Breach of a Written Contract**
**(Against Defendant Ravensburger)**

78.     Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

79.     The Agreements are valid and enforceable contracts between Upper Deck and Miller.

80.     Upper Deck is informed and believes that Ravensburger knew or reasonably should have known Miller was subject to valid confidentiality contracts before it extended Miller an offer to join Ravensburger.

81.     Rather than allow Miller to honor the Agreements and their terms, Upper Deck is informed and believes that Ravensburger induced and intended for Miller to breach his obligations

1   so that it could capitalize on Miller's knowledge of the elements of the Rush of Ikorr game so he

2   could make a near-identical game for it. This allowed Ravensburger to gain a competitive advantage,

3   an accelerated launch, and bring a nearly identical TCG to market under a different brand.

4       82.    Upper Deck is informed and believes that Ravensburger's desire to leverage this

5   competitive advantage caused Miller to breach his Agreements with Upper Deck. Ravensburger

6   should not have allowed Miller to subsequently design and create the exact TCG that he previously

7   helped develop with Upper Deck pursuant to the Agreements. Ravensburger knew or should've

8   known Miller would utilize the details and proprietary work product Miller prepared for Upper Deck,

9   which was confidential and owned by Upper Deck.

10       83.    Upper Deck has been harmed by Ravensburger's conduct, including, but not limited

11   to, lost sales, loss of goodwill and popularity of the game, thwarting the Rush of Ikorr launch, loss

12   of related revenue streams, loss of capital, costs and expenses paid to Miller and others to develop

13   Rush of Ikorr, time delay costs, and loss of further internal resources dedicated to Rush of Ikorr.

14   Ravensburger's actions in hiring away from Upper Deck and tasking Miller make the same product

15   for it was a substantial factor in this harm.

16       84.    As a result of the breaches of the Agreements with Miller, Upper Deck has been

17   injured and faces irreparable injury. Upper Deck is threatened with losing investment in amounts

18   which may not be possible to determine, unless Ravensburger is enjoined and restrained by order of

19   this Court.

20   **FIFTH CAUSE OF ACTION**
**Negligent Interference with Prospective Economic Relations**
21   **(Against Defendant Ravensburger)**

22       85.    Upper Deck re-alleges and incorporates by reference each and every allegation in this

23   Complaint as though fully set forth herein.

24       86.    Upper Deck and Miller were in a contractual and economic relationship concerning

25   the development of Rush of Ikorr, which would have resulted in future economic benefit to Upper

26   Deck.

27       87.    Ravensburger knew of, or should have known of, this relationship through any basic

28   due diligence and should have ensured that its employees are not using confidential and proprietary

15
COMPLAINT

1  information obtained from third parties to carry out their work.  As part of its duty of care in hiring

2  a game designer, Ravensburger was required to vet the specifics of the prior work the game designer

3  had undertaken to avoid misuse of property belonging to others and determine what confidentiality

4  agreements a game designer remained obligated to adhere to before commencing work.

5       88.    Ravensburger knew or should have known that Upper Deck and Miller's relationship

6  would be disrupted if it failed to act with reasonable care.  Ravensburger utilized Miller to design a

7  game without engaging in reasonable efforts to determine, in advance, whether Miller had relied on

8  confidential and proprietary work product he had already developed and collaborated on for nearly

9  two years with a competitor, or knew full well that it was utilizing Miller as a conduit to steal Upper

10  Deck's property.

11      89.    Ravensburger failed to act with reasonable care by failing to fulfill its duty to

12  investigate and perform due diligence on whether the work product of Miller was original or stolen

13  property.

14      90.    Ravensburger engaged in wrongful conduct by applying game mechanics, details,

15  and designs stolen from Upper Deck to create Lorcana.

16      91.    The relationship between Upper Deck and Miller was disrupted in that Miller

17  abruptly stopped working for Upper Deck and failed to comply with his contractual duties to Upper

18  Deck, namely not using or disclosing the confidential information he learned while working on Rush

19  of Ikorr for any other purpose.

20      92.    As a proximate result of the above-mentioned acts of Ravensburger, Upper Deck has

21  been damaged in the ways described herein, in an amount to be proven at trial.

22                          **SIXTH CAUSE OF ACTION**
                           **Constructive Trust**
23                  **(Against Defendant Miller and Ravensburger)**

24      93.    Upper Deck re-alleges and incorporates by reference each and every allegation in this

25  Complaint as though fully set forth herein.

26      94.    A constructive trust exists where, as here, some property or interest in property that

27  the defendant has no right to is wrongly acquired or detained by another party not entitled to it.

28  ///

95.     Upper Deck has an interest in its design and development of Rush of Ikorr that belongs exclusively to it and not to Miller or Ravensburger.

96.     Miller acquired this property by retaining and/or incorporating the design of the game and using it in his work for Ravensburger to create Lorcana.

97.     Upper Deck alleges on information and belief that Ravensburger, through hiring Miller and having him design Lorcana, converted and misappropriated Upper Deck's confidential information and applied it to Lorcana.

98.     Upper Deck alleges on information and belief that through Miller's conversion, Ravensburger has obtained Upper Deck's confidential information by wrongful act.

99.     Upper Deck alleges on information and belief that pursuant to California Civil Code, section 2224, Miller and Ravensburger holds Upper Deck's confidential information and any money and/or other property which they derive therefrom as an involuntary trustee for the benefit of Upper Deck.

**SEVENTH CAUSE OF ACTION**
**Conversion**
**(Against Defendants Miller and Ravensburger)**

100.    Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

101.    Upper Deck owned the property at issue—Rush of Ikorr as a whole and the related design, details, concepts, and mechanics upon which Rush of Ikorr is played—and Upper Deck was entitled to immediate possession at the time of conversion.

102.    Miller and Ravensburger knowingly took possession of and applied Upper Deck's property to develop a TCG for its own account and benefit. Miller's and Ravensburger's wrongful acts are substantial in that much of the Lorcana game is based on Rush of Ikorr. Furthermore, Miller's and Ravensburger's theft of Upper Deck's property put Upper Deck's product in peril. For example, if Upper Deck was to release Rush of Ikorr after the launch of Lorcana, the market may incorrectly assume that Rush of Ikorr is an imitation of Lorcana, when in fact the opposite is true. Alternatively, if Ravensburger ruins or mismanages the Lorcana game launch and/or play, Ravensburger will negatively effect the anticipation and sales for Rush of Ikorr.

103.     Accordingly, Upper Deck is the lawful owner of the game design and mechanics; Upper Deck was in lawful possession of said property; Upper Deck did not authorize Miller or Ravensburger to retain said property (rather, the Agreements expressly prohibit such retention); and Miller and Ravensburger applied and continue to apply that property for their own use.

104.     As a direct and proximate result of Miller's and Ravensburger's wrongful actions, Upper Deck has been damaged in an amount according to proof.

105.     The aforementioned acts of Miller and Ravensburger were willful, wanton, malicious and oppressive and were undertaken with the intent to defraud, which conduct justifies the awarding of exemplary and punitive damages in an amount to be determined at trial. Upper Deck is further entitled to attorney's fees.

### EIGHTH CAUSE OF ACTION
**Unfair Competition —Bus. & Prof. Code, § 17200 et seq.**
**(Against Defendants Miller and Ravensburger)**

106.     Upper Deck re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

107.      Since at least September 2022 through the present, Ravensburger unconscionably and without authorization, used and disseminated Upper Deck's confidential and proprietary game design to promote and market Ravensburger's newest TCG, Lorcana--a  TCG with its entire foundation resting on game details, designs, concepts, and mechanics that are and have always been Upper Deck's sole property.

108.     Ravensburger, unless restrained, will continue to use and disseminate Upper Deck's intellectual property as described herein for purposes of their own enrichment and financial gain.

109.     The conduct of Miller and Ravensburger, as described herein, constitutes unfair competition in violation of California Business & Professions Code, Section 17200, *et seq.*

110.     As a proximate result of Miller's and Ravensburger's conduct, Upper Deck is entitled to injunctive relief, disgorgement of revenue and income earned by Ravensburger based on such wrongful acts as ill-gotten gains, and restitution of sums paid to Miller.

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Upper Deck prays for judgment in its favor and against Ryan Miller and Ravensburger, inclusive as follows:

1.    For general and special damages in an amount to be determined according to proof;

2.    For injunctive relief enjoining Ravensburger from publicly releasing Lorcana;

3.    For restitution;

4.    For punitive damages in an amount appropriate to punish Miller and Ravensburger and deter others from engaging in similar misconduct;

5.    For attorneys' fees pursuant to California Civil Code § 3426.4 and otherwise where awardable by law;

6.    For costs of this suit;

7.    For interest at the maximum legal rate;

8.    For an order declaring that Ravensburger holds Upper Deck's intellectual property in trust for Plaintiff;

9.    For appointment of a receiver as an elisor to sign Upper Deck's provisional patent application on Miller's behalf; and

10.    For any other remedies at law or in equity that the court deems just and proper.

## DEMAND FOR JURY TRIAL

Upper Deck demands a trial by jury on all issues so triable.

Respectfully submitted:
Dated:  June 7, 2023                                **NICHOLAS & TOMASEVIC, LLP**

By:

Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff,
THE UPPER DECK COMPANY

19
COMPLAINT

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RYAN MILLER, an individual; RAVENSBURGER NORTH AMERICA, INC., a Washington corporation; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

THE UPPER DECK COMPANY, a Nevada corporation

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**06/07/2023** at 09:27:49 AM
Clerk of the Superior Court
By Sophia Felix, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es)*  San Diego County Superior Court

**CASE NUMBER:**
*(Número del Caso):* 37-2023-00023805-CU-BC-CTL

Hall of Justice
330 West Broadway, San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NICHOLAS & TOMASEVIC, 225 Broadway, 19th Floor, San Diego, CA 92101; Tel: (619) 325-0492

DATE: 06/08/2023                                                Clerk, by *Sophia Felix*                                , Deputy
*(Fecha)*                                                            *(Secretario)*      S. Felix                            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)                        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)              ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**Save This Form**      **Print This Form**      **Clear This Form**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Exhibit A
Page 33

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

| PLAINTIFF(S) / PETITIONER(S): | The Upper Deck Company |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Ryan Miller et.al. |
|---|---|

| THE UPPER DECK COMPANY VS MILLER [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER: 37-2023-00023805-CU-BC-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Gregory W Pollack                                    Department: C-71

## COMPLAINT/PETITION FILED: 06/07/2023

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 11/17/2023 | 01:30 pm | C-71 | Gregory W Pollack |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC.  Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

Exhibit A
Page 34

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2023-00023805-CU-BC-CTL          CASE TITLE: The Upper Deck Company vs Miller [IMAGED]

<u>**NOTICE**</u>: **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
> **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), <u>*and*</u>**
> **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

Exhibit A
Page 36

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO** | *FOR COURT USE ONLY* |
| STREET ADDRESS:      330 West Broadway | |
| MAILING ADDRESS:    330 West Broadway | |
| CITY, STATE, & ZIP CODE:  San Diego, CA  92101-3827 | |
| BRANCH NAME:        Central | |

| |
|---|
| PLAINTIFF(S):   The Upper Deck Company |
| DEFENDANT(S):  Ryan Miller et.al. |
| SHORT TITLE:    THE UPPER DECK COMPANY VS MILLER [IMAGED] |

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2023-00023805-CU-BC-CTL |
|---|---|

Judge: Gregory W Pollack                                              Department: C-71

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                    ☐  Non-binding private arbitration

☐  Mediation (private)                                    ☐  Binding private arbitration

☐  Voluntary settlement conference (private)    ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                      ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                Date: _____

_____                        _____
Name of Plaintiff                                                Name of Defendant

_____                        _____
Signature                                                        Signature

_____                        _____
Name of Plaintiff's Attorney                                  Name of Defendant's Attorney

_____                        _____
Signature                                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  06/08/2023

_____
JUDGE OF THE SUPERIOR COURT

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Craig Nicholas (SBN 178444) | Shaun Markley (SBN 291785)<br>NICHOLAS & TOMASEVIC, LLP<br>225 Broadway, 19th Floor<br>San Diego, California 92101<br>   TELEPHONE NO  (619) 325-0492   FAX NO *(Optional)*  (619) 325-0496<br>E-MAIL ADDRESS *(Optional)*  cnicholas@nicholaslaw.org | smarkley@nicholaslaw.org<br>ATTORNEY FOR *(Name)*  Plaintiff The Upper Deck Company | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**06/12/2023** at 11:11:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing, Deputy Clerk |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego<br>  STREET ADDRESS  330 West Broadway<br>  MAILING ADDRESS  330 West Broadway<br>  CITY AND ZIP CODE  San Diego, CA 92101<br>  BRANCH NAME  Hall of Justice | |
| PLAINTIFF/PETITIONER: The Upper Deck Company | CASE NUMBER<br><br>37-2023-00023805-CU-BC-CTL |
| DEFENDANT/RESPONDENT: Ryan Miller, et al. | |
| **PROOF OF SERVICE OF SUMMONS** | Ref No or File No |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [✓] summons
   b. [✓] complaint
   c. [✓] Alternative Dispute Resolution (ADR) package
   d. [✓] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [✓] other *(specify documents):* Notice of Case Assignment and Case Management Conference

3. a. Party served *(specify name of party as shown on documents served):*
      RAVENSBURGER NORTH AMERICA, INC., a Washington corporation

   b. [✓] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Cynthia Jones, Customer Service Representative / Employee Authorized to Accept Service

4. Address where the party was served:
   Corporation Service Company, 300 Deschutes Way SW Suite #208, Tumwater, WA 98501
5. I served the party *(check proper box)*
   a. [✓] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 6/9/2023    (2) at *(time):*  2:13 p.m. PT
   b. [ ] by substituted service. On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

       (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

       (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

       (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

       (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or [ ] a declaration of mailing is attached.

       (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]    **PROOF OF SERVICE OF SUMMONS**    Page 1 of 2<br>Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: The Upper Deck Company | CASE NUMBER |
|---|---|
| | 37-2023-00023805-CU-BC-CTL |
| DEFENDANT/RESPONDENT: Ryan Miller, et al. | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:             (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt*.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify)*:
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify)*: RAVENSBURGER NORTH AMERICA, INC., a Washington corporation
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                 ☐ other:

7. **Person who served papers**
  a. Name: Mark Jones
  b. Address: Addison Legal Services, LLC, 2405 Evergreen Park Drive SW, Suite B-2, Olympia, WA
  c. Telephone number: (360) 529-3933
  d. The fee for service was: $65.00
  e. I am:

    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: June 12, 2023

Mark Jones
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)            (SIGNATURE )

**PROOF OF SERVICE OF SUMMONS**

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun A. Markley (SBN 291875)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff
THE UPPER DECK COMPANY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>RYAN MILLER, an individual; RAVENSBURGER NORTH AMERICA, INC., a Washington corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 37-2023-00023805-CU-BC-CTL<br><br>**PROOF OF SERVICE**<br><br>**Dept.:**  C-71<br>**Judge:**  Hon. Gregory W. Pollack<br><br>**Complaint Filed**: June 7, 2023<br>**Trial**: None Set |

PROOF OF SERVICE

*The Upper Deck Company v. Ryan Miller, et al.*
STATE OF CALIFORNIA, COUNTY OF SAN DIEGO
Case No. 37-2023-00023805-CU-BC-CTL

# PROOF OF SERVICE

I, **Emilia S. Carrillo**, declare that I am over the age of 18 years and am not a party to the case. My business address is Nicholas & Tomasevic, LLP, 225 Broadway, 19th Floor, San Diego, California 92101. My electronic service address is ecarrillo@nicholaslaw.org.

On **June 12, 2023** I served the within: **SEE ATTACHED LIST** on the interested parties in said action by:

[ ]   **BY PERSONAL DELIVERY**:  I caused each envelope to be hand-delivered to each addressee leaving said envelope with either the addressee directly or another person at that address authorized to accept service on the addressee's behalf.

[ ]   **BY ONELEGAL:** I served upon the designated recipients via electronic transmission through the One Legal system, pursuant to Rule 2.251(b)(1)(B) of the California Rules of Court.  Upon completion of said transmission of said documents, a certified receipt is issued to filing party acknowledging receipt by One Legal's system

[X]   **BY E-MAIL:**  Pursuant to agreement by the Parties, I served the above-listed documents from my electronic service address to the email address(es) of the counsel or interested party authorized to accept service.

[ ]   **BY MAIL:**  as follows:

[ ]   **BY OVERNIGHT COURIER:** I enclosed the documents in an envelope or package provided by FEDERAL EXPRESS and addressed it to the persons listed in the attached list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized FEDERAL EXPRESS drop box.

[ ]   I enclosed the documents in a sealed envelope or package to the persons listed in the attached list. I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and mailing, it is deposited in the ordinary course of business with UNITED STATES POSTAL SERVICE, in a sealed envelope or package with postage fully prepaid. I am employed in the County of San Diego, California, where the mailing occurs

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **June 12, 2023,** at San Diego, California.

_____
Emilia S. Carrillo

1

2      ***The Upper Deck Company v. Ryan Miller, et al.***
       STATE OF CALIFORNIA, COUNTY OF SAN DIEGO
3              Case No. 37-2023-00023805-CU-BC-CTL

4                    <u>**DOCUMENTS SERVED:**</u>

5      **1.    NOTICE AND ACKNOWLEDGMENT OF RECEIPT TO DEFENDANT**
6             **RYAN MILLER RE:**
              **a.    SUMMONS;**
7             **b.    COMPLAINT;**
              **c.    CIVIL CASE COVER SHEET;**
8             **d.    NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT**
                     **CONFERENCE;**
9             **e.    ALTERNATIVE    DISPUTE    RESOLUTION    INFORMATION**
                     **PACKAGE;**
10            **f.    STIPULATION TO USE ADR; and**

11

12     **2.    PROOF   OF   SERVICE   OF   SUMMONS   AS   TO   DEFENDANT**
             **RAVENSBURGER NORTH AMERICA, INC.**

13                      <u>**PARTIES SERVED:**</u>

14     David A. Perez
       DPerez@perkinscoie.com
15     **PERKINS COIE LLP**
       1201 Third Avenue, Suite 4900, Seattle, WA 98101-3099
16     Telephone: (206) 359-8000

17     cc: Rachel Hand (RHand@perkinscoie.com); George (GAuslander@perkinscoie.com)

18     –

19     Alisha Burgin (SBN 286269)
       ABurgin@perkinscoie.com
20     **PERKINS COIE LLP**
       1888 Century Park E, Suite 1700, Los Angeles, CA 90067-172
21     Telephone: (310) 788-9900

22     cc: Melanie Duncan (MDuncan@perkinscoie.com)

23     –

24     Torryn Taylor Rodgers (SBN 319126)
       TRodgers@perkinscoie.com
25     **PERKINS COIE LLP**
       505 Howard Street, Suite 1000, San Francisco, CA 94105-3222
26     Telephone: (412) 344-7000

27     cc:  Jessica Porras (JPorras@perkinscoie.com)

28     Attorneys for Defendants RYAN MILLER and RAVENSBURGER NORTH AMERICA, INC.

                                   3
                            PROOF OF SERVICE

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Craig Nicholas (SBN 178444) | Shaun Markley (SBN 291785)<br>NICHOLAS & TOMASEVIC, LLP<br>225 Broadway, 19th Floor<br>San Diego, California 92101<br>TELEPHONE NO.: (619) 325-0492   FAX NO. *(Optional):* (619) 325-0496<br>E-MAIL ADDRESS *(Optional):* cnicholas@nicholaslaw.org | smarkley@nicholaslaw.org<br>ATTORNEY FOR *(Name):* Plaintiff The Upper Deck Company | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**06/30/2023** at 11:25:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice |

| | |
|---|---|
| PLAINTIFF/PETITIONER: The Upper Deck Company<br><br>DEFENDANT/RESPONDENT: Ryan Miller, et al. | CASE NUMBER:<br>37-2023-00023805-CU-BC-CTL |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [✔] summons

   b. [✔] complaint

   c. [✔] Alternative Dispute Resolution (ADR) package

   d. [✔] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [✔] other *(specify documents):* Notice of Case Assignment and Case Management Conference

3. a. Party served *(specify name of party as shown on documents served):*

   RYAN MILLER, an individual

   b. [✔] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   Torryn Rodgers, Esq., Counsel of Record for Defendant Ryan miller

4. Address where the party was served:
   Perkins Coie LLP, 505 Howard Street, Suite 1000, San Francisco, CA 94015

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*   (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

   (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*   from *(city):*   **or** [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Exhibit A
Page 44

| PLAINTIFF/PETITIONER:  The Upper Deck Company | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Ryan Miller, et al. | 37-2023-00023805-CU-BC-CTL |

5. c. [✔] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* June 12, 2023     (2) from *(city):* San Diego, CA

    (3) [✔] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) [ ] to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d. [ ] **by other means** *(specify means of service and authorizing code section):*

    [✔] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. [✔] as an individual defendant.

  b. [ ] as the person sued under the fictitious name of *(specify):*

  c. [ ] as occupant.

  d. [ ] On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [ ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7. **Person who served papers**

  a. Name:  Emilia Carrillo

  b. Address: Nicholas & Tomasevic, LLP, 225 Broadway, 19th Floor, San Diego, CA 92101

  c. Telephone number:  (619) 325-0492

  d. **The fee** for service was: $ 0.00

  e. I am:

    (1) [ ] not a registered California process server.

    (2) [✔] exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ] a registered California process server:

      (i) [ ] owner [ ] employee [ ] independent contractor.

      (ii) Registration No.:

      (iii) County:

8. [✔] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  June 30, 2023

Emilia Carrillo
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

---

**PROOF OF SERVICE OF SUMMONS**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Save This Form ]  [ Print This Form ]  [ Clear This Form ]

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Craig M. Nicholas (SBN 178444) \| Shaun Markley (SBN 291785)<br>NICHOLAS & TOMASEVIC, LLP<br>225 Broadway, 19th Floor<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 325-0492   FAX NO. (Optional): (619) 325-0496<br>E-MAIL ADDRESS (Optional): cnicholas@nicholaslaw.org \| smarkley@nicholaslaw.org<br>ATTORNEY FOR (Name): Plaintiff The Upper Deck Company | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

PLAINTIFF/PETITIONER: THE UPPER DECK COMPANY

DEFENDANT/RESPONDENT: RYAN MILLER

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2023-00023805-CU-BC-CTL |
|---|---|

TO (insert name of party being served): RYAN MILLER, an individual

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: June 12, 2023

Emilia Carrillo
_____
(TYPE OR PRINT NAME)     ▶     (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☑ A copy of the summons and of the complaint.
2. ☑ Other (specify):

   (1) Civil Case Cover Sheet; (2) Notice of Case Assignment and Case Management Conference;
   (3) ADR Information; and (5) Stipulation to Use ADR

**(To be completed by recipient):**

Date this form is signed: June 28, 2023

Torryn T. Rodgers, Counsel for Defendant Ryan Miller   ▶
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Save This Form ]   [ Print This Form ]   [ Clear This Form ]

# EXHIBIT B

Register of Actions for San Diego Superior Court Case No. 37-2023-00023805-CU-BC-CTL

**SUPERIOR COURT OF CALIFORNIA**
# County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2023-00023805-CU-BC-CTL | Filing Date: | 06/07/2023 |
| Case Title: | The Upper Deck Company vs Miller [IMAGED] | Case Age: | 26 days |
| Case Status: | Pending | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Gregory W Pollack |
| Case Type: | Breach of Contract/Warranty | Department: | C-71 |

## Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| 11/17/2023 | 01:30 PM | C-71 | Civil Case Management Conference - Complaint |

## Participants

| Name | Role | Representation |
|---|---|---|
| Miller, Ryan | Defendant | |
| Ravensburger North America Inc | Defendant | |
| The Upper Deck Company | Plaintiff | Belcastro, Jordan; Markley, Shaun Andrew; Nicholas, Craig M |

## Representation

| Name | Address | Phone Number |
|---|---|---|
| BELCASTRO, JORDAN | 225 Broadway 19th Floor San Diego CA 92101 | (619) 325-0492 |
| MARKLEY, SHAUN  A | 225 Broadway 19th Floor San Diego CA 92101 | |
| NICHOLAS, CRAIG  M | 225 Broadway 19th Floor San Diego CA 92101 | (619) 325-0492, (619) 325-0496 |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 06/07/2023 | Complaint filed by The Upper Deck Company. Refers to: Miller, Ryan; Ravensburger North America Inc | The Upper Deck Company (Plaintiff) |
| 2 | 06/07/2023 | Civil Case Cover Sheet filed by The Upper Deck Company. Refers to: Miller, Ryan; Ravensburger North America Inc | The Upper Deck Company (Plaintiff) |
| 3 | 06/07/2023 | Original Summons filed by The Upper Deck Company. Refers to: Miller, Ryan; Ravensburger North America Inc | The Upper Deck Company (Plaintiff) |
| 4 | 06/08/2023 | Summons issued. | |
| 5 | 06/07/2023 | Case assigned to Judicial Officer Pollack, Gregory. | |
| 6 | 06/08/2023 | Civil Case Management Conference scheduled for 11/17/2023 at 01:30:00 PM at Central in C-71 Gregory W Pollack. | |
| 7 | 06/08/2023 | Case initiation form printed. | |
| 8 | 06/12/2023 | Proof of Service of 30-day Summons & Complaint - Personal filed by The Upper Deck Company. Refers to: Ravensburger North America Inc | The Upper Deck Company (Plaintiff) |
| 9 | 06/30/2023 | Proof of Service of 30-day Summons & Complaint - Personal filed by The Upper Deck Company. Refers to: Miller, Ryan | The Upper Deck Company (Plaintiff) |