UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, a Nevada corporation,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>RYAN MILLER, an individual, *et al.*,<br>　　　　　　　　　　　　Defendants. | Case No.: 3:23-cv-1249-L-BLM<br><br>**ORDER TO TRANSFER VENUE AND DENYING MOTION TO SEAL**<br><br>[ECF No. 20, 21] |

　　　　Pending before the Court in this case alleging theft and copyright violations of a trading card game is Defendants Ryan Miller and Ravensburger North America, Inc.'s (collectively, "Defendants") joint motion to dismiss for failure to state a claim and lack of personal jurisdiction or, alternatively, to transfer these actions or, alternatively, to compel arbitration.  (ECF No. 20.)  Plaintiffs filed an opposition and Defendants replied.  (ECF Nos. 27, 28.)  Defendants also move to seal the two relevant agreements between the parties pursuant to a confidentiality clause.  (ECF No. 21.)  The Court determines the motion without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the following reasons, Defendants' motion is granted insofar as they request the transfer of venue to the United States District Court for the Western District of Washington.  The motion to seal is denied.  The motion is denied without prejudice in all other respects.

## I. BACKGROUND

According to the amended complaint, Plaintiff Upper Deck Company ("Plaintiff") engaged Defendant Ryan Miller ("Miller") as a lead game designer on a work for hire basis to develop a major proprietary trading card game for Upper Deck called "Rush of Ikorr." (ECF No. 12 at 2, 8.) Miller worked for Upper Deck developing Rush of Ikorr for over a year before terminating his employment. (*Id*. at 9.) Plaintiff alleges that either before termination or just after, Miller began working for Defendant Ravensburger North America, Inc. ("Ravensburger"), a direct competitor. (*Id*.) Plaintiff further alleges that while at Ravensburger, Miller transported his work product on Rush of Ikorr into a competing trading card game called "Disney Lorcana" ("Lorcana"). (*Id*. at 9-10.) This trading card game is alleged to be similar in many ways to Plaintiff's Rush of Ikorr. (*Id*. at 13)

Plaintiff filed a complaint in state court against Miller and Ravensburger for: (1) breach of contract; (2) breach of fiduciary duty; (3) fraud under Cal. Civ. Code § 1710(3); (4) inducing breach of a written contract; (5) intentional interference with prospective economic relations; (6) copyright infringement; (7) conversion; and (8) unfair business practices under Bus. & Prof. Code, § 17200 et seq.. (*See generally id*.) Defendants jointly removed the action to this Court. (ECF No. 1 at 2.)

Defendants filed a joint motion to dismiss for failure to state a claim and lack of personal jurisdiction or, alternatively, to transfer these actions or, alternatively, to compel arbitration. Because the Court concludes that transfer is warranted pursuant to section 1404(a), it does not reach the remaining issues. The balance of Defendants' motion is denied without prejudice to raising in the transferee district.

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly, two findings are required for transfer: (1) that the action might have been brought in the transferee district, and (2) that

the convenience of the parties and witnesses in the interest of justice favors transfer. *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir. 1985).  The burden of showing that the alternative forum is more appropriate is on the moving party. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 499 (9th Cir. 2000).

Plaintiffs do not dispute that this action could have been brought in the Western District of Washington.  Their opposition rests on the contention that "the parties agreed to a designated forum" and that Defendants have failed to show that the convenience factors favor transfer.  (ECF No. 27 at 16-20.)

Section 1404 identifies three basic factors for district courts to consider in determining whether a case should be transferred: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). The determination whether the convenience of the parties and witnesses in the interest of justice favors transfer is made "according to an individualized, case-by-case consideration of convenience and fairness." *Jones,* 211 F.3d at 498 (internal quotation marks, citation and footnote omitted).  The Ninth Circuit provides further factors that courts can use to determine whether transfer is appropriate. *Id.*

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99 (footnote omitted).

> Unlike the analysis under other provisions allowing transfer of venue,
> "a motion to transfer venue for convenience pursuant to 28 U.S.C. § 1404(a) does not concern the issue 'whether and where' an action *may* be properly litigated. It relates solely to the question where, among two or more proper forums, the matter *should* be litigated to best serve the interests of judicial economy and convenience to the parties."

*Injen Tech. Co., Ltd. v. Advanced Engine Mgmt., Inc.,* 270 F.Supp.2d 1189, 1193 (S.D. Cal. 2003) (emphasis in original).

### III. DISCUSSION

Defendants claim that the convenience of the parties, the convenience of the witnesses, choice of law, and where the contracts were formed all favor transfer. (ECF No. 20 at 19-25.) Further, Defendants argue that they are not bound by a forum-selection clause, and that Plaintiff's choice of venue should be given little weight. (*Id*. at 20-22.) The Court analyses each factor that Plaintiff and Defendants argue is relevant to the case-by-case inquiry of whether transfer of venue is appropriate.

**A. Plaintiff's Choice of Forum**

Plaintiff argues that a threshold issue is that San Diego was the selected forum to resolve disputes and the inquiry should end here. (ECF No. 27 at 18.) This would be true had Plaintiff followed the forum selection clause, which mandated that disputes between Plaintiff and Miller (but not Ravensburger) "shall be resolved by one arbitrator through binding arbitration administered by a retired judge on the Judicate West panel in San Diego, California." (ECF No. 20 at 20.) It is illogical that this term, which Plaintiff chose not to follow, would bind Defendants to litigate in *court* in San Diego when the term clearly called for a different forum. Plaintiffs are incorrect that the term is "severable" such that they can pick to enforce the location part of the clause while specifically choosing to select a different type of forum than the one specified in the clause. First, by the plain language of the agreements, severance is only allowable where a provision is "invalid, unenforceable, [or] contrary to public policy law, and/or ordinance," and not where a party is only trying to enforce one half of a single contract term and ignore the other. (*See* ECF No. 22 at 10, 18.) Second, a verbality clause cannot be used by a party to an agreement to pick and choose which parts of a legally enforceable agreement they see fit. *City of Bell v. Superior Ct.*, 220 Cal. App. 4th 236, 252 n.17 (2013) ("A party to an agreement cannot use the severability clause to remove from the agreement legally valid enforceable language which has the effect of limiting

other language which he would prefer to be unlimited."). By choosing to file this lawsuit in state court rather than through binding arbitration administered by a retired judge on the Judicate West panel, Plaintiffs have waived the right to enforce San Diego as the binding location to settle disputes. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (arbitration clause waived when a party acts inconsistently with that right).

Plaintiffs argue that regardless of the forum selection clause, their choice of forum weighs substantially in their favor. However, Plaintiffs are not in their choice of venue—they filed in state court and are only in federal court by way of Defendants' removal. *See* 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) (a Plaintiff's preference is given less weight if the "case is in federal court only because the defendant removed it."). Therefore, this factor does not heavily way in either direction.

**B. Convenience of the Witnesses**

Here, the Court finds that the convenience of the witnesses heavily favors transfer of venue. "The convenience of witnesses is often the most important factor in deciding whether to transfer an action." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2008). Defendants argue that the majority of Ravensburger employees who are relevant in the design of the Disney Lorcana game are based in the Seattle, Washington area. (ECF No. 20-3 at 2-3.) This includes Miller and Steve Warner, who are co-designers of the Disney Lorcana game. (*Id*.) Further, Defendants identify two game designers that Plaintiff engaged to replace Miller, one of whom is in the Seattle, Washinton area and one who is in neither California or Washington. (*Id*.) Plaintiff responds by arguing that their workforce will be potential witnesses and that Ravensburger has 4 employees stationed in California. (ECF No. 27 at 19.) Defendants respond that Ravensburger has 27 employees in Washington and only three California-based remote workers, none of whom are high-level executives or game designers. (ECF No. 28 at 9.)

The Court finds this factor weighs in favor of transferring the action. The vast majority of Ravensburger employees, including the co-designers of the accused game reside in the Seattle area. Further, Defendants identified at least two replacements for

Miller working on Plaintiff's game, one who is in the Seattle area and the other who is out of state.  While Plaintiff claims potential witnesses in their workforce would be local to the Southern District of California, they fail to identify any specific witnesses located here, and conversely, it appears at least some of their relevant workforce is remote and working outside of the Southern District of California.  (ECF No. 20-3 at 2-3.)  Therefore, the convenience of the witnesses weighs heavily in favor of transferring venue to the Western District of Washington.

### C. Convenience of the Parties

Ravensburger and Plaintiff are both large corporations fully capable of defending themselves in either jurisdiction, thus their convenience is afforded relatively little weight. *See, e.g. Ferrick v. Spotify USA Inc.*, 2016 WL 11623778, at *5 (C.D. Cal. Oct. 26, 2016).  Miller is the only individual party in this action. He lives in the Seattle, Washington area.  (ECF No. 20-1 at 2.)  As an individual who worked for multiple years as a free-lance independent contractor, including with Plaintiff, Miller asserts he has finite resources.  (ECF No. 20-1 at 3-4.)  Further, Miller has a young child that he helps care for.  (*Id.*)  Plaintiff argues that any inconvenience will be slight given the ability for virtual depositions and that the trial will last no more than two weeks, if it happens at all. (ECF No. 27 at 19.)  The Court finds this factor weighs in favor of transfer given the burden on Miller.

### D. Contracts

The agreements at issue in this case were negotiated when Miller came to San Diego, California to meet with Plaintiff.  (ECF No. 20-1 at 3.)  Miller executed them in his home state of Washington.  (*Id.*)  The work done under the contracts at issue and the alleged harm and appropriation by Defendants largely took place in Washington.  (ECF No. 20 at 25.) On balance, where the contract was negotiated, executed, and carried out does not heavily weigh in the court's analysis.  *See Jones*, 211 F.3d at 499 (weighing against transfer of venue when agreements were *both* executed and negotiated in California.).

### E. State Most Familiar with Governing Law

Plaintiff brings a variety of common law claims, California statutory claims, and a federal copyright claim. (ECF No. 1 at 15.) "When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." *Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999); *see also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) ("It is not for the federal courts to thwart ... local policies by enforcing an independent 'general law' of conflict of laws."). Were the action to be transferred, California's choice-of-law rules would go with the action to the transferee court. *See Van Dusen v. Barrack*, 376 U.S. 612, 639-40 (1964) (establishing that venue receiving § 1404(a) transfer is to apply the conflicts laws of the transferor venue).

If transferred, the transferee Court would have to apply California choice-of-law rules to determine the governing law for the non-statutory claims and apply California law for the statutory claims. However, "courts in one state are fully capable of applying another state's substantive law," especially when the claims involve well established principles. *Gandara v. Nestle Purina PetCare Co.*, No. 13-CV-487-L WMC, 2013 WL 2444143, at *3 (S.D. Cal. June 4, 2013). Regardless of the choice-of-law rules applied, it is not clear whether California or Washington substantive law would apply to the common law causes of action when much of the conduct complained of took place in Washinton. Further, the transferee court would be equally adept at applying the federal law claim, which appears to be a major part of Plaintiff's lawsuit. Therefore, the Court finds that while this factor weighs slightly against transfer, it has relatively little weight.

### F. Weighing the Factors

Ultimately, the Court finds that Defendants have met their burden that transferring this case to the Western District of Washinton is appropriate. Section 1404(a) states that transfer is warranted when it would promote the convenience of the parties, the convenience of the witnesses, and the interests of justice. 28 U.S.C. § 1404(a). Here, the convenience of the parties and witnesses weighs heavily in favor of transferring, and the

choice of law and choice of Plaintiff's forum weigh relatively lightly against transfer. Therefore, in the interests of justice, the Western District of Washinton is a more suitable venue.

## IV.   MOTION TO SEAL

Sealing court records implicates the "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). The lack of opposition to a motion to seal therefore does not automatically resolve it. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1128, 1130 (9th Cir. 2003).

Aside from "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation," a strong presumption applies in favor of public access to judicial records. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of public access by meeting the "compelling reasons" standard. *Id*. at 1178. The compelling reasons standard applies to documents filed in relation to any motion except a motion that is only "tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp. LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). "Under this exception, a party need only satisfy the less exacting 'good cause' standard" under Federal Rule of Civil Procedure 26(c). *Id*. at 1097. This standard allows courts to seal documents "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c).

Here, Defendants move to seal the two agreements between Plaintiff and Miller. (ECF No. 21 at 4.) Defendants themselves do not believe the documents are confidential and should be under seal, however, they file them under seal out of an abundance of caution and to avoid violating contractual obligations. (*Id*. at 5.) As this order transfers

venue and thus does not reach any dispositive issues and is only tangentially related to the merits of the case, only the lower "good cause" standard must be shown.[1]

Defendants have failed to show good cause to overcome the presumption of public access. The subject of the controversy of this case and much of the arguments surrounding venue relate to the contents of the agreements. Plaintiff has frequently invoked the terms of these agreements in their filings which were not sealed. (*See, e.g.*, ECF No. 12 at 2, 5, 6, 11, 12; ECF No. 27 at 17, 26, 27.) Further, a review of the contracts does not show how public access will result in embarrassment, disclosure of trade secrets, or any other reason that may lead the Court to find good cause to seal the documents.

## V.    CONCLUSION

Defendants' motion to transfer venue is granted. Defendants' motion to seal is denied. The motion is denied without prejudice in all other respects. Accordingly, this action is transferred to the United States District Court for the Western District of Washington.

**IT IS SO ORDERED.**

Dated: December 14, 2023

_____
Hon. M. James Lorenz
United States District Judge

---

[1] Whether the "compelling reasons" or "good cause" standard applies "does not merely depend on whether the motion is technically "dispositive."" *Ctr. for Auto Safety*, 809 F.3d at 1101. However, as these documents fail to meet the less exacting "good cause" standard, they also fail the "compelling reasons" standard.